**IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF TEXAS
HOUSTON DIVISION**

| | | |
|---|---|---|
| SHIRLEY RICHARD, | § § | |
| Plaintiff, | § § | |
| VS. | § § | CIVIL ACTION NO. H-14-358 |
| CLEAR LAKE REGIONAL MEDICAL CENTER, | § § § § | |
| Defendant. | § § | |

**MEMORANDUM AND OPINION**

Shirley Richard worked as a nurse for the Clear Lake Regional Medical Center (the "Hospital") in the Imaging Department until September 2011, when she was laid off. The reason given was a Hospital reduction-in-force that eliminated one out of three full-time employees in the Imaging Department. Richard was selected. In this lawsuit, Richard alleges that the Hospital chose her for the reduction-in-force because of her race, African-American.

After discovery, the Hospital moved for summary judgment on the ground that it had legitimate nondiscriminatory reasons for selecting Richard. (Docket Entry No. 15). The Hospital asserts that it implemented the reduction-in-force using three objective criteria. The Hospital would first lay off any nurse in the Imaging Department employed for less than 90 days. If no one fell in that category, the Hospital would lay off the nurse who had a disciplinary action in the last 12 months. If no nurse fell in either of these two categories, the Hospital would then lay off the person with the least seniority. Richard admits that of the three nurses in her department, all had worked more than 90 days, and she was the only one who had been disciplined in the last year. But Richard argues that the underlying discipline she received was racially discriminatory because coworkers

1

outside the protected class who violated the Hospital's rules were not disciplined. She also argues that the Hospital should have laid off one of the other two nurses in her department, both of whom were hired after Richard and, in Richard's view, were less qualified.

After discovery, the Hospital moved for summary judgment, Richard responded, and the Hospital replied. (Docket Entry Nos. 15, 16, 18). Based on the pleadings; the motion, response, and reply; the record; and the applicable law, the court grants the Hospital's motion for summary judgment and enters final judgment by separate order. The reasons for this ruling are set out below.

**I.      Background**

The following facts are undisputed except as noted. Bill Vicinanza hired Richard as a Radiology Nurse in the Hospital's Imaging Department on February 7, 2005. Vicinanza was Richard's supervisor throughout her employment. (Docket Entry No. 15, Ex. 1, Richard Depo. at pp. 33, 122, 167, 168, 178).

On August 26, 2011, Richard argued with Elizabeth Murphy, a CT technician who also reported to Vicinanza. (Vicinanza Depo. at pp. 22, 35, 36). Both Murphy and Richard told each other to "shut up." Richard testified that Murphy told her to "shut up" first. (Richard Depo. at pp. 196, 199). Murphy reported the argument to Vicinanza. (Vicinanza Depo. at pp. 21–22). Vicinanza investigated Murphy's report and spoke with two employees who had overheard the exchange. (*Id.* at pp. 25–29). The employees told Vicinanza that they had heard Richard yell at Murphy in a patient-care area, but had not heard Murphy yell or act inappropriately. (*Id.* at p. 29).

Vicinanza gave Richard a written reprimand on September 2, 2011. (*Id.* at pp. 22, 35, 36). Murphy, who is not black, was not disciplined. (*Id.* at p. 24). Vicinanza testified that he had previously given Richard oral counseling and warnings about her attitude toward, and

communications with, coworkers. Richard's performance evaluations for 2010 and 2011 stated that she needed to "improve her communication with coworkers." (Docket Entry No. 15, Ex. A, Exs. 17, 18). Vicinanza testified that given this history, the incident with Murphy warranted a written reprimand. (*Id.* at pp. 34, 35, 36, 38). The reprimand stated that Richard had been rude and inappropriate to CT staff on multiple occasions, that Vicinanza had discussed behavior problems with her before, and that Richards had yelled at a Hospital employee in the CT room and that EKG-area workers had overheard the incident. (Docket Entry No. 16, Ex. 4). The reprimand instructed Richard to "find a better way to communicate" and stated that Vicinanza would monitor Richard's behavior for 90 days to ensure that she improved. (*Id.*).

Richard received the written reprimand and discussed it with Vicinanza but refused to sign it. (Richard Depo. at pp. 199–200). Instead, Richard wrote on the document that "patient-care advocacy" was an essential part of her job and that Murphy's role in the argument had "headed towards an unprofessional level." (Docket Entry No. 16, Ex. 4). Richard did not mention racial bias either in her written comment or in her conversation with Vicinanza. (Richard Depo. at pp. 23–24).

Richard also talked to Suzanne Ramos, a Human Resources manager, about the reprimand. (*Id*. at pp. 206–07). Richard told Ramos that the discipline was unfair, but she did not cite racial discrimination as a factor or reason. (*Id*. at pp. 193–208).

In August 2012, Hospital administrators told Vicinanza to lay off one full-time Imaging Department nurse because the number and type of patient procedures in that department had declined. (Vicinanza Depo. at p. 19; Docket Entry No. 15, Ex. 9, Horst Depo. at p. 21; Docket Entry No. 15, Ex. 10, Declaration of Bill Vicinanza at ¶ 2). There were three full-time nurses in that department. Vicinanza contacted the Hospital's Director of Human Resources, Brad Horst, to help

select the employee for the reduction-in-force. (Vicinanza Depo. at pp. 17–18; Horst Depo. at p. 20).

Horst told Vicinanza that the Hospital used three criteria to determine which employees to select in a reduction-in-force and the order in which they would be subject to layoff: (1) whether they were recently hired; (2) their disciplinary history; and (3) their seniority. Any employee hired in the last 90 days would be laid off first. If no employee had been hired so recently, those who had received any disciplinary action within the last 12 months would be laid off. If no employee had been recently hired or had a disciplinary history, the employees with the shortest tenure in the department would be selected for layoff. (Vicinanza Depo. at p. 19; Horst Depo. at pp. 22–23).

The Imaging Department had three full-time nurses and had to select one. Richard was the only African-American. She had worked at the Hospital longer than the other two nurses, but all three nurses had worked for more than 90 days. (Docket Entry No. 15, Ex. 2, EEOC Charge). Only one of the three—Richard—had received any disciplinary action within the last 12 months. (Vicinanza Declaration at ¶ 4; Horst Depo. at p. 41). The Hospital asserts that based on these neutral criteria, it selected Richard as the nurse who would be laid off.

Horst gave Richard the letter terminating her employment. The letter told Richard that she could apply for open positions with the Clear Lake Regional Medical Center or with any of its affiliated hospitals. (Vicinanza Depo. at p. 16; Richard Depo. at p. 14). Richard did not apply for any positions. (Richard Depo. at pp. 226–27).

The day after she was laid off, Richard filed a Charge of Discrimination with the EEOC. She alleged that she was the most qualified nurse in the Imaging Department and that she had been selected for layoff because of her race. (*Id.*; Docket Entry No. 15, Ex. 2, EEOC Charge). Richard

alleged that Vicinanza treated the two white nurses more favorably in implementing the reduction-in-force because she had worked in the Department and at the Hospital longer than they had and she did a better job. (*Id.*).

Richard's EEOC charge challenged only her September 2012 termination. Richard did not claim in her charge that her September 2, 2011 disciplinary reprimand was racially motivated or otherwise unfounded. (*Id.*). The EEOC investigated Richard's termination claim and sent her a right-to-sue letter on September 25, 2013. (Docket Entry No. 15, Ex. 4). This lawsuit followed.

Richard alleges that the September 2011 discipline was racially disparate. Richard testified that the other two nurses in her department had violated the Hospital's rules on multiple occasions, that Vicinanza knew of these violations, and that they did not receive written reprimands. Richard asserts that she and other black employees received written disciplinary reprimands when they violated the Hospital's rules, because of racial discrimination. (Docket Entry No. 16 at pp. 18–19). Richard argues that Vicinanza's racially discriminatory disciplinary practices led to her written reprimand on September 2, 2011, which in turn led to her termination on September 11, 2012. (Richard Depo. at pp. 28–103). As noted, she also argues that the Hospital should not have fired her during the reduction-in-force because she had worked at the Hospital for longer than the other two nurses in the Imaging Department and did a better job. (Docket Entry No. 15, Ex. 2, EEOC Charge).

**II.     The Legal Standard for Summary Judgment**

Summary judgment is appropriate if no genuine issue of material fact exists and the moving party is entitled to judgment as a matter of law. FED. R. CIV. P. 56(c). "The movant bears the burden of identifying those portions of the record it believes demonstrate the absence of a genuine

issue of material fact." *Triple Tee Golf, Inc. v. Nike, Inc.*, 485 F.3d 253, 261 (5th Cir. 2007) (citing *Celotex Corp. v. Catrett*, 477 U.S. 317, 322–25 (1986)).

If the burden of proof at trial lies with the nonmoving party, the movant may satisfy its initial burden by "'showing'—that is, pointing out to the district court—that there is an absence of evidence to support the nonmoving party's case." *See Celotex*, 477 U.S. at 325. While the party moving for summary judgment must demonstrate the absence of a genuine issue of material fact, it does not need to negate the elements of the nonmovant's case. *Boudreaux v. Swift Transp. Co.*, 402 F.3d 536, 540 (5th Cir. 2005) (citation omitted). "A fact is 'material' if its resolution in favor of one party might affect the outcome of the lawsuit under governing law." *Sossamon v. Lone Star State of Texas*, 560 F.3d 316, 326 (5th Cir. 2009) (quotation omitted). "If the moving party fails to meet [its] initial burden, the motion [for summary judgment] must be denied, regardless of the nonmovant's response." *United States v. $92,203.00 in U.S. Currency*, 537 F.3d 504, 507 (5th Cir. 2008) (quoting *Little v. Liquid Air Corp.*, 37 F.3d 1069, 1075 (5th Cir. 1994) (en banc)).

When the moving party has met its Rule 56(c) burden, the nonmoving party cannot survive a summary judgment motion by resting on the mere allegations of its pleadings. The nonmovant must identify specific evidence in the record and articulate how that evidence supports that party's claim. *Baranowski v. Hart*, 486 F.3d 112, 119 (5th Cir. 2007). "This burden will not be satisfied by 'some metaphysical doubt as to the material facts, by conclusory allegations, by unsubstantiated assertions, or by only a scintilla of evidence.'" *Boudreaux*, 402 F.3d at 540 (quoting *Little*, 37 F.3d at 1075). In deciding a summary judgment motion, the court draws all reasonable inferences in the light most favorable to the nonmoving party. *Connors v. Graves*, 538 F.3d 373, 376 (5th Cir. 2008).

**III.    Analysis**

  **A.    The Claim That Richard's Written Reprimand Was Discriminatory**

Richard's complaint challenges both her September 2012 layoff and her September 2011 written reprimand as discriminatory. The Hospital argues that as a threshold matter, Richard's claim that the warning was discriminatory is barred as a separate basis for relief because she did not timely exhaust her administrative remedies.

Before an individual can pursue a Title VII claim in federal court, she must first exhaust available administrative remedies. *See Taylor v. Books A Million Inc.*, 296 F.3d 376, 378–79 (5th Cir. 2002). Title VII requires aggrieved parties to file charges of discrimination with the EEOC no more than 180 days after the alleged unlawful employment practice occurred. 42 U.S.C. § 2000e-5(e). Because Texas has a state agency for civil rights complaints, the Texas Commission on Human Rights, the time limit is extended to 300 days after the allegedly discriminatory act occurred. 42 U.S.C. § 2000e-5(e)(l); *EEOC v. WC&M Enters., Inc.*, 496 F.3d 393, 398 (5th Cir. 2007). A "discrete . . . discriminatory act 'occurred' on the day that it 'happened.'" *Nat'l R.R. Passenger Corp. v. Morgan*, 536 U.S. 101, 110 (2002). A discrete, time-barred act is not actionable even when it is "related to acts alleged in timely filed charges." *Id.* at 113.

Complaints stemming from EEOC charges "may be based, not only upon the specific complaints made by the employee's initial EEOC charge, but also upon any kind of discrimination like or related to the charge's allegations, limited only by the scope of the EEOC investigation that could reasonably be expected to grow out of the initial charges of discrimination." *Fine v. GAF Chem. Corp.*, 995 F.2d 576, 578 (5th Cir. 1992) (quoting *Fellows v. Universal Rest., Inc.*, 701 F.2d 447, 451 (5th Cir. 1983)); *see Sanchez v. Standard Brands, Inc.*, 431 F.2d 455, 466 (5th Cir. 1970)

7

(establishing this standard); *see also Nat'l Ass'n of Gov't Emps. v. City Pub. Serv. Bd. of San Antonio Tex.*, 40 F.3d 698, 711 (5th Cir. 1994) (citing *Sanchez* with approval). "[T]his rule protects unlettered lay persons making complaints without legal training or the assistance of counsel." *Fine*, 995 F.2d at 578. Courts must interpret the scope of an EEOC complaint broadly. *Clark v. Kraft Foods, Inc.*, 18 F.3d 1278, 1280 n.7 (5th Cir. 1994) (citing *Fellows*, 701 F.2d at 452); *Sanchez*, 431 F.2d at 465; *see Price v. Sw. Bell Tel. Co.*, 687 F.2d 74, 78 (5th Cir. 1982) ("[W]e construe employment discrimination charges with the utmost liberality.").

Richard filed her EEOC charge on September 12, 2012. (Docket Entry No. 15, Ex. 2, EEOC Charge). Richard's charge, even broadly construed, did not mention her challenge to the September 2011 written reprimand. But even if Richard's EEOC charge had included her challenge to that reprimand, a claim for relief based on that written reprimand is time-barred. Vicinanza gave Richard the written disciplinary reprimand on September 2, 2011. To assert a cause of action based on that reprimand, Richard had to file an EEOC charge by June 28, 2012. Richard did not file a charge until September 12, 2012. (Docket Entry No. 15, Ex. 2, EEOC Charge). Richard's separate claim for relief based on the written reprimand is barred for failure to exhaust available administrative remedies. Even considering the written reprimand as evidence that the later decision to select her for layoff in the reduction-in-force was discriminatory, summary judgment for the Hospital is nonetheless appropriate, as discussed in detail below.

### B.     The Claim That Selecting Richard for Layoff Was Discriminatory

Under Title VII, it is unlawful for any employer "to fail or refuse to hire or to discharge any individual, or otherwise to discriminate against any individual with respect to . . . compensation, terms, conditions, or privileges of employment, because of such individual's race." 42 U.S.C.

§ 2000e-2(a)(1). Intentional discrimination can be established through either direct or circumstantial evidence. *McCoy v. City of Shreveport*, 492 F.3d 551, 556 (5th Cir.2007);*Wallace v. Methodist Hosp. Sys.*, 271 F.3d 212, 219 (5th Cir. 2001).

Richard has not presented direct evidence of discrimination. (*See* Richard Depo. at pp. 110–12). Discrimination claims based on indirect or circumstantial evidence are considered under the burden-shifting framework of *McDonnell Douglas Corp. v. Green*, 411 U.S. 792 (1973). Under the modified *McDonnell Douglas* approach, the plaintiff has the initial burden of making a *prima facie* showing of discrimination. *Vaughn v. Woodforest Bank*, 665 F.3d 632, 636 (5th Cir. 2011); *see also McDonnell Douglas*, 411 U.S. at 802. A *prima facie* showing of discrimination requires a plaintiff to make a showing that: (1) [s]he is a member of a protected class, (2) "[s]he was qualified for the position at issue, (3) [s]he was the subject of an adverse employment action, and (4)[s] he was treated less favorably because of h[er] membership in that protected class than were other similarly situated employees who were not members of the protected class, under nearly identical circumstances. *Paske v. Fitzgerald*, 785 F.3d 977, 985 (5th Cir. 2015) (citing *Lee v. Kan. City S. Ry. Co.*, 574 F.3d 253, 259 (5th Cir. 2009)). If a plaintiff makes this showing, the burden shifts to the defendant to articulate a "legitimate, nondiscriminatory reason" for the adverse employment decision. If a defendant can produce such evidence, the presumption of discrimination dissolves. *Reeves v. Sanderson Plumbing Prods., Inc.*, 530 U.S. 133, 142–43 (2000); *Willis v. Cleco Corp.*, 749 F.3d 314, 320 (5th Cir. 2014). The plaintiff must then offer evidence to create a fact issue "either (1) that the defendant's reason is not true, but is instead a pretext for discrimination (pretext alternative); or (2) that the defendant's reason, while true, is only one of the reasons for its conduct, and another motivating factor is the plaintiff's protected characteristic (mixed-motives alternative)."

*Rachid v. Jack in the Box, Inc.*, 376 F.3d 305, 312 (5th Cir. 2004) (internal quotation and alteration marks omitted); *Vaughn*, 665 F.3d at 636 (quoting *Rachid*, 376 F.3d at 312); *see also Cullwell v. City of Fort Worth*, 468 F.3d 868, 873 (5th Cir. 2006); *Keelan v. Majesco Software, Inc.*, 407 F.3d 332, 341 (5th Cir. 2005) (analyzing a Title VII claim under the modified approach).

### 1. Richard's *Prima Facie* Showing

Because a plaintiff in a reduction-in-force case is generally not replaced, she need not prove that she was replaced by someone outside the protected class to make a *prima facie* showing. *See Palasota v. Haggar Clothing Co.*, 342 F.3d 569, 576 (5th Cir. 2003), *cert. denied* 540 U.S. 1184 (2004). A number of alternative *prima facie* tests have been stated. In *Bauer v. Abemarle Corp.*, 169 F.3d 962, 966 (5th Cir. 1999), the Fifth Circuit stated that to make a *prima facie* showing of discrimination in a reduction-in-force case, a plaintiff could instead show that: (1) she is a member of a protected class, (2) she was adversely affected by the employer's decision, (3) she was qualified to assume another position, and (4) others who were not members of the protected class remained in similar positions. In *Palasota*, 342 F.3d at 574, an age-discrimination case, the Fifth Circuit required the plaintiff to show that: "(1) he was discharged; (2) he was qualified for the position; (3) he was within the protected class at the time of discharge; and (4) he was either i) replaced by someone outside the protected class, ii) replaced by someone younger, or iii) otherwise discharged because of his age." *Id.* at 576 ((emphasis omitted) quoting *Bodenheimer v. PPG Indus., Inc.*, 5 F.3d 955, 957 (5th Cir. 1993)).

The Hospital argues that Richard must show that she was qualified not only for the position she was fired from, but also for another position that the Hospital could have reassigned her to. Richard argues that she is required to show only that she was qualified for her old job. More recent,

10

but unpublished, Fifth Circuit cases have not resolved which test applies to a reduction-in-force. Some cases hold that the plaintiff must show that she was qualified to assume another position when she was discharged. *See Sullivan v. Worley Catastrophe Servs., LLC*, 591 F. App'x 243, 246 (5th Cir. 2014) (unpublished); *Tyler v. La-Z-Boy Corp.*, 506 F. App'x 265, 269 (5th Cir. 2013) (unpublished); *Okon v. Harris Cnty. Hosp. Dist.*, 426 F. App'x 312, 315 (5th Cir. 2011) (unpublished); *Ortiz v. Shaw Grp., Inc.*, 250 F. App'x 603, 606 (5th Cir. 2007) (unpublished). Other cases hold that the plaintiff must show only that she was qualified for the position that she was fired from. *See Simmons-Myers v. Caesars Entm't Corp.*, 515 F. App'x 269, 274 (5th Cir.) *cert. denied*, 134 S. Ct. 117 (2013) (unpublished) (the plaintiff must show only that "she is qualified"); *Pryor v. MD Anderson Cancer Ctr.*, 495 F. App'x 544, 546 (5th Cir. 2012) (unpublished) (the plaintiff must show that she "was qualified for the position"). In *Brown v. Miss. State Senate*, 548 F. App'x 973, 976–77 (5th Cir. 2013) (unpublished), the Fifth Circuit held that the plaintiff had made a *prima facie* showing because "she showed that she is black and therefore in a protected class; that she was qualified for the Committee Assistant position she held; that she was terminated from that position, and that a white Committee Assistant . . . was retained during the RIF." *Id.* at 977  (internal quotations omitted). In *Howard v. United Parcel Serv., Inc.*, 447 F. App'x 626, 629 (5th Cir. 2011) (unpublished), the Fifth Circuit held that the plaintiff had to show that he was qualified for his old job. *Id.* "Because the record reflects that only [the plaintiff]'s specific position was eliminated and his duties were assumed by someone outside the protected class, [the plaintiff] has made a *prima facie* showing of discrimination." *Id.*

There is another issue on which the Fifth Circuit guidance is unclear. The Hospital also argues that in order to show she was qualified for other open positions, Richard must show that she

11

applied for specific open positions at the Hospital. The Hospital relies on *Chavarria v. Despachos Del Norte, Inc.*, 390 F. Supp. 2d 591, 598 (S.D. Tex. 2005), in which the district court held that the plaintiffs' failure to apply for other jobs after they were terminated in a reduction-in-force was fatal to their *prima facie* case. Other district courts have disagreed with *Chavarria* and have held that the plaintiff does not need to identify other available jobs or apply for them. *See, e.g.*, *Stippick v. Stone & Webster Servs., LLC*, No. Civ. A. H-10-0290, 2011 WL 564081, at *10–11 (S.D. Tex. Feb. 8, 2011).

The Fifth Circuit has not addressed this issue in a published case. In *Dubaz v. Johnson Controls World Servs., Inc.*, 163 F.3d 1357 (5th Cir. 1998) (unpublished), the plaintiff's position was eliminated in a reduction-in-force, but the defendant offered to retain her if she enrolled in a certification course to become qualified for a related position. *Id.* The plaintiff agreed, but she dropped out of the course and never reenrolled. *Id.* The court held that the plaintiff had not met her burden of showing that she was qualified for other available positions. *Id.*

In this case, unlike *Dubaz*, there is no evidence that the Hospital offered Richard a specific position and the training for that position, and that Richard refused to complete that training. But the court in *Dubaz* did not hold that this was the only way for a plaintiff to make a *prima facie* showing of discrimination in selecting those subject to a reduction-in-force. The court also examined whether the plaintiff had shown *prima facie* evidence of "straight discharge," which requires the plaintiff to show that "(1) she was a member of a protected group; (2) she was qualified for, and adequately performed, her job; (3) she was terminated from that job; and (4) her employer had a continued need for someone to perform the same work after she was terminated." *Id*. In *Creaghe v. Albemarle Corp.*, 98 F. App'x 972, 975 (5th Cir. 2004) (unpublished), an age-

12

discrimination case, the court held that the plaintiff had not made a *prima facie* showing because he identified only one open position, which another employee held and which required computer skills that the plaintiff lacked. *Id.* The plaintiff did not assert that he was qualified for the jobs available after the RIF, including the jobs that took over his old responsibilities. *Id.*

The parties have not cited, and the court has not found, a published Fifth Circuit case holding that a plaintiff must identify open positions for which she is qualified and apply for those positions to make a *prima facie* showing. And, as discussed above, some Fifth Circuit cases hold that, at least when the employer retains some employees with similar positions in a reduction-in-force, a plaintiff does not need to show that she is qualified for other positions, only that she was qualified for her old job. *See Simmons-Myers*, 515 F. App'x at 274; *Pryor*, 495 F. App'x at 546; *Brown*, 548 F. App'x at 976–77; *Howard*, 447 F. App'x at 629.

Richard's termination letter invited her to apply for other positions at the Hospital and at affiliated medical centers, but it did not offer a specific post. Richard did not apply for other positions, and she has not identified any available position that she was qualified for. The record shows, however, that Richard was qualified for the position she held, that she was the only person fired in the reduction-in-force, that white nurses who were less senior were retained, and that those nurses assumed Richard's job responsibilities after she was laid off. (Docket Entry No. 15, Ex. 2; Docket Entry No. 15, Ex. 3 at p. 2). The Fifth Circuit has found this sufficient to make a *prima facie* showing in several unpublished cases. *See, e.g.*, *Brown*, 548 F. App'x at 976–77; *Howard*, 447 F. App'x at 629.

Because "[t]o establish a *prima facie* case, a plaintiff need only make a very minimal showing," the court assumes that Richard has met her initial burden and declines to impose

13

additional requirements that are not uniformly applied in the Fifth Circuit's precedents. *Nichols v. Loral Vought Sys. Corp.*, 81 F.3d 38, 41 (5th Cir. 1996) (quoting *Thornbrough v. Columbus & Greenville RR Co.*, 760 F.2d 633, 69 (5th Cir. 1985)); *see also Amburgey v. Corhart Refractories Corp.*, 936 F.2d 805, 812–13 (5th Cir. 1991) ("[W]hat is suspicious in reduction-in-force cases is that the employer fired a qualified, older employee, but retained younger ones. If we focus . . . on why the plaintiff rather than another employee was discharged, the discharge of an older employee rather than a younger one is initially unexplained. Under these circumstances, requiring the employer to articulate reasons for his decision to fire the plaintiff is appropriate." (alterations in original)).

### 2. The Hospital's Legitimate Nondiscriminatory Reason for Selecting Richard

A reduction-in-force is a legitimate nondiscriminatory reason for terminating employees. *See Taylor v. Abermarle Corp.*, 286 F. App'x 134, 134–35 (5th Cir. 2008) (citing *EEOC v. Tex. Instruments Inc.*, 100 F.3d 1173, 1181 (5th Cir. 1996)). The Hospital used its previously established objective criteria to select the individual for the reduction-in-force. *See Roberson v. Alltel Info. Servs.*, 373 F.3d 647, 652 (5th Cir. 2004) (affirming summary judgment because "[t]he record clearly indicates that Alltel's reduction-in-force was based on objective criteria"). These objective criteria required Vicinanza, who had to choose one out of three nurses to lay off, to select the nurse with the most significant recent disciplinary history if none of the three had been hired within the past three months. (Vicinanza Depo. at p. 19; Horst Depo. at pp. 23–24). The burden shifts back to Richard to show that the Hospital's nondiscriminatory reasons for selecting her for the reduction-in-force were a pretext for discrimination or that discrimination was a motivating factor. *See Vaughn*, 665 F.3d at 636.

14

### 3. Pretext or Motivating Factor

A plaintiff may raise a factual dispute as to whether her employer's proffered reasons are pretextual "either through evidence of disparate treatment or by showing that the employer's proffered explanation is false or unworthy of credence." *Smith v. Sw. Bell Tel. Co.*, 456 F. App'x 489, 492 (5th Cir. 2012) (quotation marks and citation omitted). To raise a fact dispute, a plaintiff must rebut each of the proffered nondiscriminatory reasons with "substantial evidence." *Johnson v. Manpower Prof'l Servs.*, 442 F. App'x 977, 981 (5th Cir. 2011) (quotation marks and citation omitted); *see also Black v. Pan Am. Labs., LLC*, 646 F.3d 254 (5th Cir. 2011); *Price v. Fed. Express Corp.*, 283 F.3d 715, 720 (5th Cir. 2002) ("On summary judgment . . . the plaintiff must substantiate [her] claim of pretext through evidence demonstrating that discrimination lay at the heart of the employer's decision.").

Richard does not dispute that the Hospital needed to reduce the number of nurses in the Imaging Department from three to two and that she was the one selected for layoff. Nor does she dispute that the three objective criteria the Hospital identified required laying her off, not the other two nurses, because none of the three nurses in the Department were recently hired and she was the only one with a recent disciplinary action. Her arguments that she was the most senior Imaging Department nurse, and, in her view, the most qualified, do not support an inference of pretext or a factual dispute material to determining pretext. There is no showing that the Hospital's stated reasons for her termination—the reduction in patient procedures that necessitated a staff reduction and the three neutral criteria used in its reductions-in-force—were false, or that the true reason was racial animus. Richard argues that the Hospital should have used different criteria in implementing the reduction-in-force, and should have based its decision solely on performance and seniority and

not included disciplinary history. "Under [Title VII], courts are charged only with determining whether such actions were racially discriminatory; where they are not shown to be, courts cannot second-guess the bases for them." *Jenkins v. Methodist Hosps. of Dallas, Inc.*, 478 F.3d 255 (5th Cir. 2007); *accord Bryant v. Compass Grp. USA Inc.*, 413 F.3d 471, 481 (5th Cir. 2005).

Richard argues that the three reduction-in-force criteria, though facially neutral, had a discriminatory effect because her September 2011 disciplinary reprimand was itself racially discriminatory. Richard's claim based on the written warning is time-barred. *See Morgan*, 536 U.S. at 113. The evidence Richard identifies does not support an inference that the reprimand she received was disparate compared to the treatment non-black employees received for similar rule infractions. "[T]o establish disparate treatment a plaintiff must show that the employer gave preferential treatment to another employee under nearly identical circumstances; that is, that the misconduct for which the plaintiff was [disciplined] was nearly identical to that engaged in by other employees." *Jackson v. Frisco Indep. Sch. Dist.*, No. 14-40371, — F.3d —, 2015 WL 3687803, at *5 (5th Cir. June 15, 2015) ((alteration in original) quoting *Okoye v. Univ. of Tex. Houston Health Sci. Ctr.*, 245 F.3d 507, 514 (5th Cir. 2001)).

The record shows that Elizabeth Murphy, a white CT Technician, was not reprimanded for arguing with Richard. Murphy was not similarly situated to Richard, a nurse. *See Lee*, 574 F.3d at 260–61 ("The employment actions being compared [must] be deemed to have been taken under nearly identical circumstances when the employees being compared held the same job or responsibilities, shared the same supervisor or had their employment status determined by the same person, and have essentially comparable violation histories."). Nor has Richard offered or pointed to evidence in the record showing that Vicinanza's investigation into the altercation between

Richard and Murphy, which included interviewing two employees who were present and who reported that Richard had yelled at Murphy but Murphy had not acted inappropriately, did not occur as described or was unreasonable or in bad faith. Richard does not allege or offer evidence showing that the Hospital departed from its usual procedures in issuing the disciplinary written reprimand, given her prior oral counseling and warnings for similar issues.

Nor are Heather Sweet and Lori Foster, the other two nurses in the Imaging Department, appropriate comparators. Richard alleges that both broke Hospital rules about health and safety protocols and electronics use. There is no showing that they violated similar rules prohibiting rude and unprofessional treatment of coworkers or that they had received prior oral counseling and warnings for similar behavior.

The undisputed evidence of Vicinanza's prior oral counseling and warnings to Richard for similar behavior, the notations about Richard's need for improvement in talking to her coworkers in her evaluations, the undisputed evidence that she did have a heated exchange with Murphy, the evidence of the investigation and the results, and the absence of any competent disparate discipline evidence, precludes inferring that relying on the prior written reprimand as the basis for selecting Richard for layoff was a pretext for discrimination or a motive for that decision. *See Daniel v. Univ. ENSCO, Inc.*, 507 F. App'x 434, 439 (5th Cir. 2013) (citing *Nichols*, 81 F.3d at 41).

Richard has not presented a basis to infer, or evidence that would give rise to a factual dispute as to whether, non-black Imaging Department nurses who yelled at coworkers and had received prior oral counseling and warnings for that kind behavior did not receive written reprimands. The September 2011 written reprimand does not support an inference of discrimination

or give rise to a fact dispute material to determining whether relying on that reprimand to select Richard for the reduction-in-force was discriminatory.

## IV.     Conclusion

The Hospital's motion for summary judgment, (Docket Entry No. 15), is granted. Final judgment is separately entered.

SIGNED on June 30, 2015, at Houston, Texas.

Lee H. Rosenthal
United States District Judge